IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HARRY W. SMITH,  )
    )
    Plaintiff,  )
    )
v.  )  Civil Action No. 3:19CV75–HEH
    )
CAPT. BOOTH, *et al.*,  )
    )
    Defendants.  )

**MEMORANDUM OPINION**
(Granting in Part and Denying in Part
Defendants' Motion for Summary Judgment)

Harry W. Smith, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action. Smith contends, *inter alia*, that while he was incarcerated at Meherrin River Regional Jail ("MRRJ") he was not provided with an appropriate Kosher diet. Smith names as Defendants: Captain Jason Booth, Captain John Lucy, and Investigator Rodney Jacobs ("Defendants").[1] Smith raises the following claims for relief:[2]

    Claim 1    Defendants violated Smith's rights under the Free Exercise Clause of the First Amendment because:
(a) the Kosher meals at MRRJ lacked the proper rabbinical supervision and certification (ECF No. 14, at 1); and,
(b) MRRJ meals are not Kosher in "product, preparation, or storage" (*id.* at 2).

---

[1] By Memorandum Opinion and Order entered on October 29, 2020, the Court dismissed all claims against Defendant Clary because Smith failed to serve him in a timely manner. (ECF Nos. 39, 40.)

[2] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, spacing, and spelling in the quotations from the parties' submissions.

> Claim 2     Assuming the diet at MRRJ is Kosher, Defendants violated Smith's rights under the First Amendment because they removed him from that diet and failed to place him back on the diet after he filed grievances and informal complaints. (*Id.* at 1–3.)
>
> Claim 3     Captain Booth retaliated against Smith for filing this civil action by removing Smith from the Kosher diet. (*Id.* at 3.)
>
> Claim 4     Defendants' actions described in Claims 1 and 2 violated Smith's rights under the RLUIPA. (*Id.* at 1–4.)

Smith demands monetary damages and injunctive relief.[3] (*Id.* at 4–5.)

The matter is before the Court on Defendants' Motion for Summary Judgment. Despite the provision of notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and multiple extensions of time, Smith has not responded. For the reasons set forth below, Defendants' Motion for Summary Judgment (ECF No. 33) will be granted in part and denied in part.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and

---

[3] Although Smith mentions the Fourteenth Amendment in his Complaint, he fails to articulate how that Amendment is implicated, much less violated, by Defendants' conduct.

admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submit: the affidavit of Capt. Booth ("Booth Aff.," ECF No. 34–1); the affidavit of Capt. Lucy ("Lucy Aff.," ECF No. 34–2); the affidavit of Investigator Jacobs ("Jacobs Aff.," ECF

No. 34–3); the affidavit of Brent Wright, the Custodian of the policies at MRRJ ("Wright Aff.," ECF No. 34–4); and the affidavit of Natarcha Gregg ("Gregg Aff.," ECF No. 34–5).[4] Defendants attached to these affidavits a number of other documents that the Court cites to by the CM/ECF number.

In light of foregoing submissions and principles, the following facts are established with respect to the Motion for Summary Judgment.

## II. SUMMARY OF PERTINENT FACTS

### A. General Facts Pertaining to Food Options at MRRJ

Capt. Booth is in charge of the kitchen at MRRJ. (Booth Aff. ¶ 6.) Capt. Booth notes that:

> In 2018, MRRJ offered a regular menu and a common fare menu to inmates. The common fare menu was the only menu provided for inmates seeking a diet consistent with their religious beliefs. At MRRJ, we maintained a list for those inmates that required a religious diet, such as a Kosher diet. Thus, the common fare menu is synonymous with the Kosher diet. The common fare diet is sometimes referred to as the Kosher diet and the list of those who required Kosher food due to their religious beliefs was referred to as the Kosher list. Those who were on the Kosher list received food from the common fare menu.
> The common fare menu was pork-free and Kosher.
> . . . .
> At MRRJ, common fare meals are prepared with separate pots and pans, separate utensils and separate cooking equipment to avoid contamination with non-common fare foods and meals. All items used for the preparation of common fare meals are cleaned and stored separately from those items used to prepare regular menu items. Additionally, all food to be served as part of the common fare menu are stored separately from regular menu food items. Thus, common fare and regular menu items are kept separate at all times.

---

[4] The Court omits any secondary citations from these affidavits.

4

> In addition to the regular and common fare menus, inmates may purchase food and other items from the commissary or may special order meals from the "Fresh To You" menu.
> Individuals outside of the jail, such as relatives of inmates, may order a meal from the "Just Like Home" menu for an inmate. "Just Like Home" meals are not Kosher.

(*Id.* ¶¶ 7–8, 11–13 (paragraph numbers omitted).)

### B. Smith's Religious Affiliation

Smith was incarcerated at MRRJ from May 18, 2018 until September 4, 2019. (*Id.* ¶ 5.) Smith initially told MRRJ officials that he was a Christian. (*Id.* ¶ 14.) On May 21, 2018, Smith went to the Classification Department at MRRJ and declared that he did not have a religious preference. (*Id.* ¶ 15.)

During the classification process, Smith was provided with an inmate handbook which contained all of MRRJ's policies. (*Id.* ¶ 16.) Pursuant to MRRJ's Religious Diet policy, inmates who wish to receive a Kosher diet must submit a Jewish Prisoner Services International Inmate Information Form to Capt. Booth for verification and approval. (ECF No. 34–1, at 12–13.) Because Smith did not express any religious preference during classification, from May 21, 2018 until October 29, 2018, Smith received food from the regular menu at the MRRJ. (Booth Aff. ¶ 18.)

On August 26, 2018, Smith requested that his religious preference be changed to Jewish. (*Id.* ¶ 21.) This request was denied based on Smith's prior statement at classification that he did not identify with any particular religion. (*Id.*)

5

### C. Smith's Initial Placement on the Common Fare Diet and Subsequent Removal from that Diet

On October 26, 2018, Smith again requested a change to his religion. (*Id.* ¶ 22.) On October 29, 2018, Smith's religious preference was changed to Jewish. (*Id.*) On or about that same day, Smith was placed on the common fare diet. (*Id.* ¶ 23.)

> On October 31, 2018, Smith sent an inmate request stating that the bread he received with his dinner tray was not Kosher. In response, [Capt. Booth] informed him that the bread being served was Kosher. [Capt. Booth] was able to assert this as accurate based upon a letter from the bakery who provides the jail with bread, Flowers Baking Co. In the letter, Flowers Baking Co. verified that the ingredients of their products and the facility their products are produced in are Kosher certified.

(*Id.* ¶ 24.)

On November 8, 2018, Capt. Booth removed Smith from the Kosher diet, because Smith consumed a non-Kosher Just Like Home meal that had been ordered by Smith's family. (ECF No. 34–2, at 10–11.) After being informed of the reason for his removal, Smith informed Capt. Booth that he would tell his family to stop ordering the meals. (*Id.* at 11.) Smith explained that he previously had given away or traded the Just Like Home meals. (*Id.*) Thereafter, on November 15, 2018, Smith told Capt. Booth that his family had stopped ordering Just Like Home meals for him and he wished to be placed back on the Kosher diet. (*Id.* at 13.) Capt. Booth declined to put Smith back on the Kosher diet until he conducted further investigation. (*Id.*) Despite reservations that Smith lacked a sincere religious desire for a Kosher diet, Capt. Booth placed Smith back on the Kosher diet on November 26, 2018. (Booth Aff. ¶¶ 30–31.)

6

In the ensuing months, Capt. Booth continued to have doubts about the sincerity of Smith's desire for a Kosher diet because of Smith's consumption of items from the regular menu. (*Id.* ¶ 34.) Capt. Booth, however, fails to explain whether this consumption of items from the regular menu occurred after Smith had been restored to the Kosher diet. On March 27, 2019, in order to ensure the sincerity of Smith's beliefs, Smith was provided a Jewish Prisoner Services International Inmate Information Form ("Jewish Inmate Diet Form") to complete and submit to Capt. Booth. (*Id.*) On April 23, 2019, Smith submitted an inmate request form wherein he stated, "As a legally credentialled rabbi in good standing, I am offended that you would ask me to prove I'm Jewish. If you want me to show you my credentials, I can . . . ." (ECF No. 34–2, at 18.) Capt. Booth responded that Smith needed to complete and return the Jewish Inmate Diet Form, but he was welcome to attach his credentials to that form. (*Id.*)

On April 29, 2019, because Smith had failed to return the form, he was removed from the Kosher diet. (Booth Aff. ¶ 34.) Later that same day, Capt. Booth received Smith's Jewish Inmate Diet Form. (ECF No. 34–2, at 19, 21.) Subsequently, Capt. Booth sent Smith's Jewish Inmate Diet Form and Smith's purported rabbinical credentials to Jewish Prison Services International ("JPSI") for verification. (*Id.* at 33–38.) On May 16, 2019, Matthew Perry, the Executive Director of JPSI responded to Capt. Booth:

> The inmate wrote that his Synagogue is the "Universal Life Church" and that he was converted by "Rabbi Smith." The Universal Life Church is NOT a Jewish organization and Rabbi Smith is an inmate at your facility

that purchased his title from the Universal Life Church—none of this has anything to do with any branch of Judaism.

(*Id.* at 38.) On May 21, 2019, in response to a grievance filed by Smith, Investigator Jacobs informed Smith, that in light of the information received from JPSI, Smith would remain on the regular diet. (*Id.* at 40.)

On July 1, 2019, Smith filed an inmate request seeking to be added to the Kosher diet list. (Booth Aff. ¶ 37.) Capt. Booth instructed Smith to fill out the required form and return it to him for processing. (*Id.*) On July 20, 2019, Smith filed an inmate request stating that he had returned the required form on July 4, 2019 and had not received a response. (*Id.* ¶ 38.) Capt. Booth informed Smith that he had sent Smith's form to JPSI and had yet to receive a response. (*Id.*)

On August 6, 2019, Smith submitted another inmate grievance regarding the lack of a Kosher diet. (ECF No. 34–2, at 48–50.) Capt. Booth responded that MRRJ had been waiting to hear from JPSI. (*Id.* at 48.) Capt. Booth informed Smith that he did "not meet the requirements for [JPSI's] service. Therefore, you do not meet the requirements for a Kosher diet at MRRJ." (*Id.*) On September 4, 2019, Smith was transferred from the MRRJ to the Virginia Department of Corrections ("VDOC").

## II. ANALYSIS

### A. RLUIPA and Mootness

It is settled that RLUIPA does not authorize a private cause of action for money damages against state officials in their official or personal capacities. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (holding that state officials sued in their official capacities

8

enjoy Eleventh Amendment Immunity against RLUIPA claims for damages); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (concluding that, as an exercise of Congress's spending clause authority, RLUIPA does not authorize claims for monetary damages against state officials in their individual capacities); *see Haight v. Thompson*, 763 F.3d 554, 569–70 (6th Cir. 2014) (concluding that, as an exercise of Congress's authority under the Commerce Clause, RLUIPA did not authorize claims for monetary damages against state officials in their individual capacities). Accordingly, Smith's demands for monetary damages with respect to RLUIPA will be dismissed.

Additionally, Smith seeks injunctive relief in the form of a permanent placement on the Kosher diet at MRRJ. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman*, 569 F.3d at 186 (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Smith has been transferred to the VDOC. Accordingly, Smith's demands for injunctive relief will be dismissed as moot. Furthermore, as Smith cannot obtain any relief under RLUIPA, Claim 4 will be dismissed.

### B. Smith Failed to Exhaust His Administrative Remedies with Respect to Claim 1(a)

In Claim 1(a), Smith contends that Defendants' failure to provide rabbinical supervision and certification of the Kosher diet at MRRJ renders the diet non-Kosher. The pertinent statute provides: "No action shall be brought with respect to prison

conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

MRRJ provides a grievance procedure for inmates. (Lucy Aff. ¶ 5.) The grievance procedure requires the inmate to first attempt to informally resolve the matter by filing a request form. (*Id.* ¶ 7.) If the complaint is not resolved through the informal process, the inmate then can request and file a grievance form. (*Id.* ¶¶ 10–11.) If the

inmate receives an unsatisfactory response to his grievance, he can appeal the decision on his grievance. (*Id.* ¶¶ 12–13.)

Smith failed to submit any grievance complaining that the meals at MRRJ were not Kosher because of a lack of rabbinical supervision and certification. Therefore, he failed to exhaust his administrative remedies with respect to this claim. Accordingly, Claim 1(a) will be dismissed.

### C. Free Exercise Claims

In order to survive summary judgment on a First Amendment, Free Exercise claim, an inmate "must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). With respect to the second element, "[a] practice or policy places a substantial burden on a person's religious exercise when it 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (second alteration in original) (quoting *Thomas*, 450 U.S. at 718).

#### 1. Claim 1(b)

In Claim 1(b), Smith contends Defendants violated his right to a Kosher diet because the Kosher diet is not Kosher in "product, preparation, or storage." (ECF No. 14, at 2.) The undisputed evidence reflects the Kosher diet at MRRJ is Kosher in product, preparation, and storage. Accordingly, Claim 1(b) lacks factual merit and will be dismissed.

11

### 2. Claim 2

In Claim 2, Smith contends that Defendants violated his First Amendment Free Exercise rights when they removed him from the Kosher diet. As an initial matter, Capt. Lucy and Investigator Jacobs are entitled to summary judgment with respect to this claim because they did not remove him the Kosher diet—Capt. Booth did. Capt. Lucy and Investigator Jacobs merely responded to Smith's grievances and explained why Smith had been removed from the Kosher diet. *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (concluding that prison official's denial of a grievance does not reflect personal participation in the alleged constitutional violation described in the grievance). Thus, they did not personally participate in the deprivation of Smith's First Amendment, Free Exercise rights. Accordingly, Claim 2 will be dismissed with respect to Capt. Lucy and Investigator Jacobs.

Capt. Booth suggests that Claim 2 should be dismissed because Smith fails to demonstrate that he had a sincere religious belief in eating a Kosher diet. Thus, according to Capt. Booth, the failure to provide such a diet did not substantially burden Smith's religious exercise. As explained below, this argument is not persuasive for the period after November 26, 2018.

From May 29, 2018 through November 8, 2018, Smith received and apparently consumed thirty-four (34) non-Kosher Just Like Home meals. Additionally, during that period, Smith ordered numerous items from the commissary which were not Kosher. However, after Capt. Booth informed Smith that he had been removed from the Kosher

diet because of his consumption of a Just Like Home meal, Smith promptly told his family to stop ordering the meals and requested to be placed back on the Kosher diet. On November 26, 2018, Capt. Booth placed Smith back on the Kosher diet.

Although the record does not demonstrate that Smith had sincere religious desire and was committed to eating Kosher prior to the middle of November of 2018, the same cannot be said after Smith was placed back on the Kosher diet on November 26, 2018. Capt. Booth fails to direct the Court to any specific evidence that reflects that after that date Smith ate non-Kosher items from the commissary or willingly consumed other food that was not Kosher. Indeed, as reflected above, Smith directed his family to stop ordering food for him that was not Kosher.

From November 26, 2018 until April 29, 2019, Smith received a Kosher diet. On April 29, 2019, Smith was removed from the Kosher diet because he had failed to complete and return the Jewish Inmate Diet Form that Capt. Booth sent him roughly a month earlier. On April 30, 2019, Capt. Booth received Smith's Jewish Inmate Diet Form.[5] Nevertheless, Smith was not returned to the Kosher diet while Capt. Booth awaited verification from JPSI regarding the sincerity of Smith's faith. Ultimately, Capt. Booth received information from JPSI that caused him to doubt the sincerity of Smith's faith. Of course, "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." *Cutter v.*

---

[5] Defendants rather disingenuously suggest that Smith failed to receive the Kosher diet after April 29, 2019 because "Plaintiff refused to complete and return [the Jewish Inmate Diet Form]." (ECF No. 34, at 15.) The record rather clearly reflects that after April 29, 2019, although Smith had completed the Jewish Inmate Diet Form, they refused to place him back on the Kosher diet.

13

*Wilkinson*, 544 U.S. 709, 725, n.13 (2005). Defendants, however, fail to adequately explain what information they sent to JPSI and why that entity would be qualified to be the final arbiter regarding the sincerity on Smith's desire to eat a Kosher diet. *Cf. Morrison v. Garraghty*, 239 F.3d 648, 657 (4th Cir. 2001) (concluding prison policy was unconstitutional which conditioned consideration of inmate's receipt of Native American spiritual articles upon proof that he is of the Native American race). Capt. Booth fails to adequately demonstrate why he is entitled to summary judgment with respect to Claim 2. Accordingly, the Motion for Summary Judgment with respect to Claim 2 will be denied without prejudice.[6]

### D. Retaliation

In order to survive summary judgment for his First Amendment retaliation claim, Smith must produce evidence that demonstrates that: "(1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected

---

[6] Capt. Booth also asserts that he is entitled to qualified immunity. When a defendant asserts that he or she is entitled to qualified immunity, he or she "must do more than mention its existence and demand dismissal of the suit." *Fisher v. Neale*, No. 3:10CV486–HEH, 2010 WL 3603495, at *3 (E.D. Va. Sept. 8, 2010). Specifically, a defendant must:

> (1) identify the specific right allegedly violated "at the proper level of particularity," *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007); (2) brief, with full supporting authority, why the right was not so clearly established as to put a reasonable official on notice of any legal obligations; and (3) describe with particularity the factual basis supporting the assertion that a reasonable official in the defendant's situation would have believed his conduct was lawful. *See Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990).

*Id.* Based on these requirements, Capt. Booth's briefing on qualified immunity is inadequate and does not provide a basis for granting summary judgment at this time.

14

activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). Here, Capt. Booth contends that Smith cannot show any causal relation between his protected activity (the filing of the instant lawsuit) and his removal from the Kosher diet.

To establish the third element, Smith must show that his filing of this lawsuit was a "substantial or motivating factor" in Capt. Booth's decision to remove Smith from the Kosher diet. *Haendel v. Virginia Dep't of Corr.*, No. 7:18–CV–00289, 2020 WL 7018564, at *9 n.12 (W.D. Va. Nov. 30, 2020) (citing *Martin v. Duffy*, 977 F.3d 294, 300 (4th Cir. 2020)). Absent direct evidence of a link, a plaintiff seeking to establish such a causal link "must at least show (1) that the defendant had knowledge of the plaintiff's protected conduct, and (2) that there was temporal proximity between the protected conduct and the adverse action." *Id.* (citing *Constantine*, 411 F.3d at 501). There is no evidence of a direct link between Smith's filing of this action and his removal from the Kosher diet. Smith fails to demonstrate that Capt. Booth had knowledge of the present action at the time he removed Smith from the Kosher diet on April 29, 2019.[7] Moreover, Capt. Booth swears that Smith was not removed from the Kosher diet for filing this or any lawsuit. Accordingly, Claim 3 lacks merit and will be dismissed.

---

[7] Capt. Booth was not served with a copy of the Complaint until on or about October 24, 2019. (ECF No. 27, at 5–6.)

15

## III. CONCLUSION

The Motion for Summary Judgment (ECF No. 33) will be granted in part and denied in part. Smith's demands for injunctive relief will be dismissed as moot. Claims 1(a), 1(b), 3, and 4 will be dismissed. Claim 2 will be dismissed with respect to Capt. Lucy and Investigator Jacobs. Should Capt. Booth choose to file a second motion for summary judgment addressing Claim 2, he must do so within sixty (60) days of the date of entry hereof.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: Feb 23, 2021
Richmond, Virginia